WOLF, Respondent, v. WOLF et al., Appellants.

(164 N. W. 106.)

(File No. 4085.  Opinion filed August 30, 1917.)

1. **Husband and Wife—Alienation of Affections—No Evidence of Advising Husband to Desert—Defendant's Declaration at Time of Marriage, Not Connected, Competency.**

In a suit for damages to plaintiff through alienation of her husband's affections, held, that testimony by plaintiff that defendant had great dislike for plaintiff prior to her marriage to his brother, which he opposed, that he at about time of marriage said he would rather follow his brother to his grave than see him married to plaintiff, there being no further evidence tending to connect said declaration and facts with subsequent events by way of further acts of defendant tending to alienation of husband's affections, such testimony did not tend to prove any issue, and should have been excluded.

2. **Evidence—Irrelevant Testimony, Afterwards Stricken, Admission, and Failure to Connect—Prejudice.**

Where, in a suit for alienation of plaintiff's husband's affections by defendant, his brother, much testimony concerning financial troubles between the brothers, irrelevant to the issue and not subsequently connected with other relevant evidence, was admitted and afterwards stricken out, yet held, the impression it made on minds of jury could not have been otherwise than prejudicial to defendant.

3. **Husband and Wife—Suit for Alienation—Sufficiency of Evidence.**

Nor did said testimony, in connection with the fact that during a large portion of time subsequent to the marriage plaintiff and her husband were not living in the same community with defendant, but there was no time when he had not sufficient opportunity to interfere had he been so disposed, and, conceding all evidence received on the trial, including evidence of financial troubles growing out of various banking transactions carried on by plaintiff's husband and defendant subsequent to the marriage, to have been relevant and material, it was insufficient to support verdict for plaintiff; the worst that defendant was shown ever to have said to plaintiff being

that she was insane, and that he suggested that she ought to be sent to some place where she could have medical treatment.

4. **Same—Suit for Alienation—Judgment Roll in Husband's Successful Divorce Suit, Admissibility.**

> The judgment roll showing a decree of divorce in a husband's divorce suit against his wife for cruelty, **held**, inadmissible in the wife's suit against her husband's brothers and sister for alienation of her husband's affections. So held, notwithstanding the evidence in the divorce case fully supported the findings therein.

> Whiting, J., taking no part in the decision.

(Appeal from Circuit Court, Brule County. Hon. FRANK B. SMITH, Judge.

Action by Gale B. Wolf, against J. H. Wolf, Dora Wolf and A. G. Wolf, for damages for alienation of plaintiff's husband's affections. From a judgment dismissing the action as to Dora Wolf and A. G. Wolf, and for plaintiff against defendant J. H. Wolf, and from an order overruling a motion for a new trial, defendant J. H. Wolf appeals. Judgment and order reversed.

*Brown & Brown,* for Appellants.

*House & Dyer,* and *Spangler & Haney,* for Respondent.

(1) To point one of the opinion, Appellant cited: Hostetter v. Green, (Ky.) 150 S. W. 652; First National Bank v. Stewart, 114 U. S. 224; Rickabus v. Gott (Mich.) 16 M. 384; State v. LaMont, 23 S. D. 174.

Respondent cited: Geromini v. Burvelli, 46 L. R. A. (N. S.) 465.

(2) To point two of the opinion, Appellant cited: State v. DeMasters, 15 S. D. 580, 90 N. W. 852; Corbett v. Great Northern Ry. (N. D.) 125 N. W. 1054.

(3) To point three of the opinion, Appellant cited: Park v. Park (Colo.) 91 Pac. 830.

(4) To point four of the opinion, Appellant cited: Luick v. Arends (N. D.) 132 N. W. 353; Note to DeFord v. Johnson, 46 L. R. A. (N. S.) 1084.

POLLEY, J. The plaintiff, Gale Wolf, brought this action against John Wolf, Dora Wolf, and A. G. Wolf, for the recovery of damages sustained by her because of the alleged alienation of the affections of her husband, David Wolf, by the defendants. John Wolf is a brother of plaintiff's husband, David Wolf. The

action was dismissed as to Dora Wolf and A. G. Wolf, and plaintiff had judgment against the defendant John Wolf. From such judgment, and an order overruling his motion for a new trial, John Wolf appeals.

[1] There is no evidence that appellant ever directly advised or counseled respondent's husband, David Wolf, to abandon or desert, or even to neglect her; but she claims that such abandonment and desertion were the logical and probable result of a long course of malignant conduct on the part of appellant. Over appellant's objection, the trial court permitted respondent to show that appellant had a great dislike for respondent prior to her marriage to his brother, that he opposed such marriage, and that he was heard to say, at about the time the marriage took place, that he had rather follow his brother to his grave than to see him married to respondent. Whether this evidence was competent or not, had it been followed up by other evidence tending to connect it with subsequent events, it is not necessary to determine. There is no such evidence. If the testimony of respondent herself is to be given any credit whatever, she and her husband lived together in perfect harmony, and without any interference whatever by appellant, from the time of their marriage, which occurred in June, 1896, until during the month of May, 1909. It is true that, during a large portion of this time, respondent and her husband were not living in the same community with appellant; but there was no time when there was not sufficient opportunity to interfere, had appellant been so disposed. Evidence of the above facts in no way tended to prove any of the issues of the case, and should have been excluded by the court.

[2, 3] During the last four or five years that respondent and her husband lived together, he was engaged in the banking business, and, during a portion of this time, appellant was associated with him in such business. Over appellant's objection, the trial court admitted a large volume of testimony relative to financial troubles growing out of the various banking transactions. This evidence had no relevancy to the issues involved, and was afterward withdrawn from consideration of the jury by the court. While it was undoubtedly admitted with the expectation on the part of the court that it would be connected with other evidence tending to prove the issues in the case, and was withdrawn from

consideration of the jury when its irrelevancy became apparent, the impression it made upon the minds of the jury could not have been otherwise than prejudicial to the rights of appellant. But, conceding all the evidence that was received at the trial to be relevant and material, it is not sufficient to support the verdict. There is no evidence in the record that tends to show that appellant did anything, intentionally or unintentionally, to alienate the affections of respondent's husband, or that he was actuated by malice in anything that he did. The worst he is shown ever to have said of her is that she was insane, and the most that he ever suggested in regard to a separation was that she ought to be sent some place where she could have medical treatment.

[4] About the time of the commencement of this action, respondent's husband commenced an action against her for a divorce. This action was tried, and resulted in a decree of divorce in favor of the plaintiff. Appellant offered the judgment roll in that case in evidence at the trial of this case. It was refused admittance, and we think properly so; but the findings of fact made by the court are set out in the record in this case, and may properly be referred to. Finding of fact No. 5 reads as follows:

"That for many years last past the defendant has treated the plaintiff with extreme cruelty, and has inflicted upon the plaintiff grievous mental suffering continuously for more than 10 years last past. That the plaintiff during all of his married life has been a member of the Methodist Episcopal Church, and has always been desirous and often in the habit of attending church service, and has always been in the habit of saying grace or asking the blessing at meal time in his family. That for many years prior to the commencement of this action the defendant has been in the habit of mocking and jeering at the plaintiff's religious observances. That when asking a blessing at the table she frequently in an angry manner would call him a hyprocrite, and in the presence of the children, and sometimes in the presence of strangers, would continue to pour out the coffee and otherwise arrange dishes on the table during the time that the plaintiff was asking the blessing. That she would do this intentionally, either through anger, or in order to show her contempt and derision for the plaintiff's religious observances. That she encouraged the children

in disobedience and contempt for the plaintiff's authority. That she on different occasions, without any cause or grounds therefor, accused the plaintiff of undue familiarity and improper conduct with the women Sunday school teachers of the Methodist Episcopal Sunday school at Kennebec, of which Sunday school the plaintiff was at the time the superintendent. That she frequently referred to the plaintiff and his people as being 'low-lived, having been brought up in a hogpen,' and on one occasion, in speaking to the plaintiff of his sister Dora, who was born with a deformity of the mouth, made a comparison in regard to Dora's mouth which is unfit to be repeated or set out in the record of the court."

The evidence taken in the divorce case is not before us, but the evidence contained in the record in this case fully sustains the above finding of fact. A careful reading of the testimony can lead to no other conclusion than that respondent's present plight is the result of her own conduct and treatment of her husband during their married life. No doubt her pitiable condition strongly appealed to the sympathies of the jury, as it certainly does to the sympathies of the court; but this does not entitle her to damages from the appellant. The burden was upon her to show, by a preponderance of the evidence, that appellant, by his conduct, intentionally alienated the affections of her husband. This she not only failed to do, but, on the other hand, the evidence shows that she herself, if any one, alienated his affections.

The judgment and order appealed from are reversed.

WHITING, J., takes no part in the decision.